IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCRESIA CISNEROS,<br><br>  Plaintiff,<br><br>  v.<br><br>AMERICAN GENERAL FINANCIAL SERVICES, INC. ET AL.,<br><br>  Defendants._____/ | No. C 11-02869 CRB<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION** |

Now pending is a motion by Defendant Springleaf Financial Services, Inc., formerly known as American General Financial Services, Inc. ("Defendant AGFS"), to compel arbitration. Mot. (dkt. 33). Plaintiff Lucresia Cisneros ("Plaintiff") contends that Defendants American General Financial Services, Inc., Hispanic Educational, Inc., and Logic's Consulting, Inc., engaged in a door-to-door scheme selling personal computers and software financed through credit accounts opened with Defendant AGFS. On behalf of herself and similarly situated California consumers, Plaintiff alleges violations of California consumer protection statues and federal truth in lending laws. Defendant AGFS, however, argues that the consumer contract between Plaintiff and Defendant AGFS requires Plaintiff to arbitrate her claims on a non-class, non-consolidated basis. As discussed below, both procedural and substantive unconscionability are present in the arbitration provision. Accordingly, the Court

DENIES Defendant AGFS's Motion to Compel Arbitration.

## I. BACKGROUND

In February of 2008, a sales agent representing Hispanic Educational, Inc. and Logic's Consulting, Inc. entered Plaintiff's home to sell a computer system financed by Defendant AGFS. Cisneros Decl. (dkt 35-1) ¶¶ 3, 5. The sales agent represented that the "educational" computer system he was selling was necessary for the education of Plaintiff's children, and Plaintiff believed that the sales agent was a professional educator. Id. ¶¶ 5, 7. Plaintiff tried to refuse the sales agent's solicitation, but he persisted. Id. ¶ 7. At one point, Plaintiff left the home to pick up her daughter, but the sales agent insisted on waiting inside her home. Id.; Second Amended Compl. ("SAC") (dkt. 31) ¶ 19. Eventually, the sales agent told Plaintiff that the computer and software would be free after tax deductions. Cisneros Decl. ¶ 8. Plaintiff alleges that this representation, along with a desire for the sales agent to leave her home, prompted Plaintiff to agree to purchase the computer system. Id. The sales agent returned with other representatives within an hour to install the computer in Plaintiff's home. SAC ¶ 20. The sales agent informed Plaintiff that she would need to pay $118 per month over two years to pay off the computer system, and had Plaintiff sign a document written in Spanish, entitled "Convenio." Id. The Convenio outlined the payment plan for the $2,900 Plaintiff owed on the computer system. See SAC, Ex. A. At the time of the transaction, Plaintiff made a $100 down payment. See id.

All of the interactions between Plaintiff and the sales representative, and the first form that Plaintiff signed, were in Spanish. See Cisneros Decl. ¶¶ 9-10. At the time of the transaction, Plaintiff asserts that she had limited ability to understand, speak, or read English. Id. ¶ 9. The sales representative then had Plaintiff sign a second document, entitled "Sales Slip," which incorporated an "Account Agreement" that Plaintiff also signed.[1] See SAC ¶ 21; see also Andretich Decl. (dkt 32-3), Exs. B, C. Both the Sales Slip and Account

---

[1] At the motion hearing, Defendant repeatedly emphasized that Plaintiff signed the Account Agreement twice, as if that proved that Plaintiff understood the Agreement's terms. Plaintiff could have signed the Account Agreement many times over and the Court still would not find Defendant's urged inference to be reasonable.

2

Agreement were written in English. Cisneros Decl. ¶ 10. Plaintiff contends that she could not read or understand, nor did the sales agent explain, the contents of either form. Id. The Sales Slip and Account Agreement created a credit account to finance payment of the computer system through Defendant AGFS, and Plaintiff did not understand that this made the total payment price much higher than the initial purchase price. SAC ¶ 21.

Some time after the initial sale, Plaintiff received a statement from Defendant AGFS alerting her that Plaintiff had financed the remaining $2,800 left on the computer system at 21% interest, such that it would take three years to pay off a total of $4,506. Id. ¶ 23. Plaintiff alleges that her total cost is more than 900% of the original fair market value of the computer system itself, which was approximately $500. Id. Her total cost ($4,506) is also more than 150% of the price Plaintiff believed she agreed to ($2,900).[2] See id. ¶ 23.

Plaintiff called Defendant AGFS and spoke with a Spanish-speaking representative who confirmed that the statement stemmed from the credit account she opened with Defendant AGFS. Id. ¶ 25. Plaintiff tried to cancel the transaction. See id., Ex. C. To date, Defendant AGFS has not responded to Plaintiff's request. Id. ¶ 28.

In September of 2010, Plaintiff filed her initial Complaint against Defendants AGFS, Hispanic Educational, Inc., and Logic's Consulting, Inc. in Alameda County Superior Court.[3] See Notice of Removal (dkt. 1) at 1. After that court denied Defendant AGFS's Motion for Judgment on the Pleadings, Defendant AGFS removed the action to this Court. See Opp'n (dkt. 35) at 3. In April of 2012, Plaintiff filed her Second Amended Complaint on behalf of herself and a putative California class of consumers. See generally SAC. Plaintiff claims that Defendants AGFS, Hispanic Educational, Inc., and Logic's Consulting, Inc., sold computer systems and software to consumers and arranged financing at predatory terms

---

[2] This is presumably a significant amount of money to Plaintiff, who works seasonally in the field or at a packing house and makes $1,200 a month. Cisneros Decl. ¶ 13. In the seasons where there is no work, she receives $1,720 a month in unemployment benefits. Id. Plaintiff supports four children. Id.

[3] The Superior Court entered default against Hispanic Educational, Inc. in November of 2010 after its failure to appear. Opp'n at 3. Plaintiff has been unable to serve Logic's Consulting, Inc. at any of its known addresses. Id.

3

through credit accounts opened with Defendant AGFS. Id. Plaintiff alleges violations of the California consumer protection statutes and federal truth-in-lending laws. Id.

In May of 2012, Defendant AGFS filed the present Motion to Compel Arbitration and Stay Judicial Proceedings. See Mot. The arbitration provision Defendant AGFS relies on is in the English-written Sales Slip and Account Agreement. See Andretich Decl., Exs. B, C. The Account Agreement, above where Plaintiff's signature was required, stated:

> By signing below, you have read, understand, and agree to the terms and conditions in this document, including the arbitration provisions that provide, among other things, that either you or creditor may require that certain disputes between you and creditor be submitted to binding arbitration.

Id. The arbitration provisions were provided on a separate page of the Account Agreement that did not require Plaintiff's signature.[4] See id. Defendant AGFS argues that the statutory language of the Federal Arbitration Act, the holding in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), and a subsequent series of decisions support Defendant's contention that Plaintiff must arbitrate her claims. See generally Mot.

Plaintiff, however, argues that the agreement to arbitrate should be invalidated

---

[4] The arbitration provision states: "Except as provided below, either you or Creditor may choose that any claim or dispute between the parties or any claim, dispute or controversy involving you and any other party arising from or relating to this agreement or the relationships which result from this agreement, including the validity of this arbitration clause or the entire agreement, shall be resolved by binding arbitration. Notwithstanding any other terms of the Arbitration Provisions, you cannot elect to arbitrate and Creditor shall not be required to arbitrate Creditor's self-help or judicial remedies of replevin, garnishment, repossession, or foreclosure with respect to any property that secures this Agreement. Provided, however, that Creditor can elect to arbitrate such claims and, if such election is made, you shall be bound by such election and the terms of the Arbitration Provisions shall govern the proceedings. Creditor's exercise of its rights under this paragraph shall not be deemed a waiver of its rights to elect arbitration. A single arbitrator shall conduct arbitration, under the Federal Rules of Evidence and National Arbitration Forum's Code of Procedure in effect at the time the claim is filed. Rules and forms of the National Arbitration Forum may be obtained by calling . . . . The arbitrator shall not be allowed to conduct arbitration on a class-wide basis, and the arbitrator shall not be allowed to consolidate arbitration demands filed by others. The party electing arbitration shall pay any initial filing fee except that Creditor shall pay the filing fee in excess of $125 and any deposit required by the NAF. Creditor agrees to pay the initial costs of arbitration up to a maximum or eight hours of hearings. Any participating hearing will take place in the county where you live unless you and Creditor agree to another location. Arbitration Provisions shall be governed by the Federal Arbitration Act. Judgment upon the award may be entered in any court having jurisdiction. By signing this Agreement you agree to the Arbitration Provision above, which provides that you or Creditor can require that all disputes, claims, or controversies between the parties to be submitted to BINDING ARBITRATION. YOU UNDERSTAND THAT YOU ARE VOLUNTARILY WAIVING YOUR RIGHT TO A JURY TRIAL OR JUDGE TRIAL FOR SUCH DISPUTES." See Andretich Decl. Ex. C (capitalization in original).

4

because the arbitration clause that Defendant seeks to enforce is procedurally and substantively unconscionable.[4] Opp'n at 1. Plaintiff primarily relies on three facts: (1) The arbitration clause is written in English although the underlying transaction was orally negotiated in Spanish, and Plaintiff can neither read nor write in English; (2) Plaintiff signed the documents because Defendant's representative refused to leave until she did so; and (3) the arbitration is one-sided – allowing Defendant to litigate while forcing Plaintiff to arbitrate. Id. at 1-2. Plaintiff argues that these bases for unconscionability are generally applicable and not unique to arbitration. Id. at 2. Thus, Plaintiff asks that the Court not enforce the arbitration agreement.[5] Id.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress's purpose in passing the Act was to put arbitration agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the FAA, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1,

---

[4] Defendant AGFS asserts in its Reply and asserted again at the motion hearing that Plaintiff challenges the contract as a whole. See Reply (dkt. 36) at 1l. At this time, however, Plaintiff only challenges the arbitration provision and not the entire contract. See Opp'n at 2. That Plaintiff accepts that a contract exists is evidenced by her having received a computer, made a down payment of $100, and made six installment payments totaling $720.02. See Andretich Decl. ¶¶ 4, 7.

[5] Defendant AGFS argues that the arbitrator, rather than the Court, should decide the unconscionability claim Plaintiff raises. Reply at 6. However, a claim of unconscionability involving an arbitration clause can be decided by a court as a matter of law while invalidating the agreement as a whole on grounds of unconscionability can be a question for an arbitrator to decide. See Nagrampa v. Mailcoups, Inc., 469 F.3d 1257, 1263 (9th Cir. 2006). Plaintiff does not challenge the Account Agreement as a whole as Defendant AGFS contends. See Reply at 4. Instead, Plaintiff challenges the arbitration clause. See Opp'n at 5-6 ("[T]he arbitration clause that Defendant seeks to enforce has high levels of both procedural and substantive unconscionability and, therefore, cannot be enforced.").

5

24-25 (1983). The Supreme Court has emphasized that courts should refer a matter for arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 584-85. Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." Id. at 589.

At the same time, however, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech. Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers, 363 U.S. at 582). Thus, a federal court's task in reviewing the arbitrability of a particular dispute is to determine whether the parties have agreed to submit that dispute to arbitration. "The standard for demonstrating arbitrability is not high." Simula, Inc. v. Autoliv, Inc., 175 F.3d 717, 719 (9th Cir. 1999). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds v. Byrd, 470 U.S. 213 (1985) (citing §§ 3 and 4 of the FAA) (emphasis in original).

The final phrase of § 2 of the FAA provides that arbitration agreements are to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, in addition to determining the arbitrability of a dispute, courts should determine the enforceability of the arbitration agreement. Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress or unconscionability,' but not by defenses that apply

6

only to arbitration or that drive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC, 131 S. Ct. at 1746. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

## III. DISCUSSION

Defendant moves to compel arbitration, arguing that the arbitration provision in the signed Account Agreement is valid and enforceable and that Plaintiff's claims fall within the scope of the provision. In particular, Defendant stresses that since Concepcion, challenges to class action waiver clauses in arbitration agreements have routinely been rejected by federal courts in the Ninth Circuit and nationwide.[6] See Mot. at 12. Arbitration agreements, however, are still subject to unconscionability analysis post-Concepcion. See Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 1203-04 (2012) (per curiam) (remanding case to state court to determine whether an arbitration clause is unconscionable and "unenforceable under state common law principles that are not specific to arbitration"); Kanbar v. O'Melveny & Meyers, No. 11-0892, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011) (stating that after Concepcion, "arbitration agreements are still subject to unconscionability analysis").

Numerous courts have found that Concepcion does not preclude the application of the California unconscionability principles as stated in Armendariz v. Found. Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).[7] See, e.g., Laughlin v. VMware, Inc., No. 11-530, 2012 WL 298230, at *3 (N.D. Cal. Feb. 1, 2012) (holding that California courts continue to use the procedural and substantive unconscionability analysis for arbitration agreements post-Concepcion, and applying that analysis); Lau v. Mercedes-Benz USA, LLC, No. 11-1940, 2012 WL 370557, at *7 (N.D. Cal. Jan. 31, 2012) (finding misplaced defendant's argument

---

[6] This argument, however, misses the mark because Plaintiff does not challenge the arbitration provision based on its class action waiver.

[7] Plaintiff and Defendant AGFS agree that the Account Agreement is governed by a California choice of law provision and, therefore, "California law governs the determination of whether a valid agreement to arbitrate exists." See Mot. at 8; Opp'n at 5.

7

that Concepcion rejected an unconscionability defense to arbitration agreements); Kanbar, 2011 WL 2940690, at *8 (applying the Armendariz analysis to an employment arbitration agreement).

Under California law, courts may refuse to enforce a contract where, at the time of its formation, it was unconscionable, or may limit the application of any unconscionable clause. Cal. Civ. Code § 1670.5(a) (West 2012). A finding of unconscionability has both a procedural and substantive component and "is a valid reason for refusing to enforce an arbitration." Armendariz, 24 Cal. 4th at 114. While procedural unconscionability focuses on the element of "'oppression' or 'surprise' due to unequal bargaining power," substantive unconscionability centers on "'overly harsh,' or 'one-sided' results." Id. Both components must be present before a court may refuse to enforce a contract but need not be present to the same degree. Id. A sliding scale is applied so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. Finally, unconscionability cannot be determined only by looking at the face of the contract. Blake v. Ecker, 93 Cal. App. 4th 728, 743 (2001). The inquiry must also look into the circumstances under which the contract was executed, its purpose, and effect. Id.

### A. Procedural Unconscionability

Procedural unconscionability deals with "the manner in which the contract was negotiated and the circumstances of the parties at that time." Kinney v. United Health Care Servs., Inc., 70 Cal. App. 4th 1322, 1329 (1999). In particular, the procedural component of unconscionability focuses on two factors: oppression and surprise. Armendariz, 24 Cal. 4th at 114. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice,' [whereas] '[s]urprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." Bruni v. Didion, 160 Cal. App. 4th 1272, 1288 (2008). "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally

unconscionable to at least some degree." Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1004 (9th Cir. 2010).

Notably, post-Concepcion, courts have split as to whether a contract of adhesion is sufficient to demonstrate procedural unconscionability.[8] Compare In re Gateway LX6810 Computer Prods. Litig., No. 10-1563, 2011 WL 3099862, at *3 (C.D. Cal. July 21, 2011) (finding that a mere assertion that a contract was an adhesion contract was insufficient to demonstrate procedural unconscionability), with Trompeter v. Ally Fin., Inc., No. 12-0392, 2012 WL 1980894, at *3 (N.D. Cal. June 1, 2012) (finding that the adhesive contract established a limited degree of procedural unconscionability), and Morvant v. P.F. Chang's China Bistro, Inc., No. 11-5405, 2012 WL 1604851, at *4 (N.D. Cal. May 7, 2012) (finding that a contract of adhesion is a contract of oppression).

The Account Agreement Plaintiff signed is a contract of adhesion. The arbitration clause was "imposed and drafted by the party of superior bargaining strength" and "relegate[d]" to the Plaintiff "only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113. Accordingly, the Court finds that the standardized, take it or leave it nature of the Account Agreement establishes some degree of procedural unconscionability. See Trompeter, 2012 WL 1980894, at *4 (finding that plaintiff "established a minimal degree of procedural unconscionability based on the adhesive nature of the form arbitration agreement and the lack of opportunity for him to negotiate its terms").

Moreover, Plaintiff is a relatively unsophisticated party in a weaker bargaining position than Defendant AGFS. See Opp'n at 6. Plaintiff was born in Mexico and received only a fourth grade education there. Cisneros Decl. ¶ 3. She is of limited financial means and lives in a community of migrant Spanish-speaking farm workers. Id. ¶¶ 3, 13. Plaintiff

---

[8] Defendant relies on a portion of Concepcion stating: "the times in which consumer contracts were anything other than adhesive are long past." 131 S. Ct. at 1750 (citations omitted). Though this statement does not mean contracts of adhesion are not procedurally unconscionable, some courts have used it to find that adhesive arbitration agreements do not strongly weigh in favor of procedural unconscionability. See, e.g., Beard v. Santander Consumer USA, Inc., No. 11-1815, 2012 WL 1292576, at *12 (E.D. Cal. Apr. 16, 2012) ("In light of the Supreme Court's decision in Concepcion, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.").

9

cannot read or write in English and, at the time of the sales transaction, did not speak English. Id. ¶ 9. Plaintiff's interaction with the sales agent was conducted entirely in Spanish, but the Account Agreement and Sales Slip that contained notice and description of the arbitration provision were entirely in English.[9] See id. ¶¶ 9-10. The sales agent did not verbally translate the forms, provide Spanish versions of the forms, or even alert Plaintiff to the arbitration clause. Id. ¶¶ 10-11. The fact that the solicitation took place in her home further exacerbates aspects of procedural unconscionability. See Opp'n at 7. Plaintiff states that signing the documents was the only way she knew how to make the sales representative leave her home, and that while at home, no one could assist her in translating the documents. See id.

Though Defendant cites to an unpublished case from this District to emphasize the duty to read contractual terms even with a language barrier, the case cited deals with two sophisticated merchants. See Chateau des Charmes Wines Ltd. v. Sabte USA, Inc., No. 01-4203, 2002 WL 413463, at *3 (N.D. Cal. Mar. 12, 2002), rev'd on other grounds sub nom. Chateau des Charmes Wines Ltd. v. Sabate USA Inc., 328 F.3d 528 (9th Cir. 2003). In the present case, Plaintiff's vulnerability in her home and her inability to understand arbitration terms because they were written in English increases the procedural unconscionability of this contract. Further, the sales representative did not mention the arbitration provision to the Plaintiff though he did explain other aspects of the transaction in Spanish. See Cisneros Decl. ¶¶ 8, 11.

Defendant AGFS's failure to attach the applicable rules of the National Arbitration Forum (NAF) to the arbitration provision, while not dispositive, also adds to the Agreement's procedural unconscionability. See Samaniego v. Empire Today LLC, 205 Cal. App. 4th 1138, 1146 (2012) (finding that failure to provide plaintiffs with a copy of the relevant arbitration rules was "significant" in supporting the conclusion that the agreement was

---

[9] Defendant AGFS was likely aware of this language difference. Logic's Consulting, Inc. and Hispanic Educational, Inc. sent a Spanish-speaking sales representative, targeted Plaintiff in her primarily Spanish-speaking community, emphasized to Plaintiff the educational benefits of the computer and software to her children, and had Plaintiff sign a Spanish-translated document ("the Convenio"). See Cisneros Decl. ¶¶ 3, 5, 7, and 10.

10

procedurally unconscionable).  Courts have found oppression where arbitration rules are referenced but not attached in the signed agreement in both employment and non-employment contexts.  See, e.g., Zullo v. Sup. Ct., 197 Cal. App. 4th 477 (2011) (finding procedural unconscionability when rules not attached even though no evidence in conflict with the written agreement), Trivedi v. Curexo Tech. Corp., 189 Cal. App. 4th 387, 393-94, 116 (2010) (collecting cases holding that a failure to provide a copy of the arbitration rules to which employee would be bound supported a finding of procedural unconscionability), and Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406 (2003) (establishing the procedural unconscionability factor of oppression because the arbitration rules were not attached to the contract).

In the present case, the arbitration provision provided that arbitration would be conducted pursuant to NAF Rules and Code of Procedure at the time the claim was filed and also provided NAF's telephone number and web address.[10]  See Andretrich Decl., Ex. C. Notwithstanding the language barrier, the arbitration provision's reference to NAF rules without attaching them would have – had she known she was signing an arbitration agreement – "forced" Plaintiff "to go to another source to find out the full import" of what Plaintiff was about to sign "prior to signing."  Harper, 113 Cal. App. 4th at 1407.  This further increases the procedural unconscionability of the arbitration provision.

Based on these numerous problems, the Court finds the contract to be highly procedurally unconscionable.

### B. Substantive Unconscionability

"Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'"  Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (quoting Kinney, 70 Cal. App. 4th at 1330).  An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "'one-sided' results."  Armendariz, 24 Cal. 4th at 114.  Generally, "parties are free to

---

[10] NAF, however, no longer handles consumer arbitration disputes.  See Mot. at 13.

11

contract for asymmetrical remedies and arbitration clauses of varying scope." Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting Armendariz, 24 Cal. 4th at 118). However, "the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." Id. As stated earlier, a court need not find much substantive unconscionability when there is a high level of procedural unconscionability. Armdendariz, 24 Cal. 4th at 114. In evaluating the terms of the contract, courts must analyze the contract at the time both parties agreed to be bound. Ingle, 328 F.3d at 1172.

The arbitration provision here lacks bilaterality and creates unduly harsh one-sided effects. In particular, the arbitration provision provides that, "[n]otwithstanding any other terms of the Arbitration Provisions, you cannot elect to arbitrate and Creditor shall not be required to arbitrate Creditor's self-help or judicial remedies of replevin, garnishment, repossession, or foreclosure with respect to any property that secures this Agreement." Andretich Decl. Ex. C at 7. Additionally, "Creditor can elect to arbitrate such claims and, if such election is made, you shall be bound by such election." Id. Defendant has therefore carved out and preserved remedies for judicial forum issues that relate to debt collection and "are the only practical remedies Defendant would ever seek against consumers." See Opp'n at 9.

Defendant argues that the Arbitration Agreement need not be perfectly mutual to be enforceable. See Reply at 8-9. Defendant further argues that it is not always unconscionable under California law for one party to have certain remedies or claims excluded from arbitration. See Armendariz, 24 Cal. 4th at 117 (noting that a party with superior bargaining power properly may obtain "extra protection for which it has a legitimate commercial need without being unconscionable"). Defendant contends that it has a legitimate interest in maintaining its ability to enforce its rights with respect to judicial self-help remedies. Reply at 9.

The Court rejects Defendant AGFS's argument. Here, the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself

12

the ability to seek redress in either an arbitral or judicial forum as to issues that matter to it the most. "California courts have found a lack of mutuality supporting substantive unconscionability." Nagrampa, 469 F.3d at 1285 (citations omitted). Indeed, Armendariz explained that substantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." 24 Cal. 4th at 119; see also Martinez v. Master Protection Corp., 118 Cal. App. 4th 107, 115 (2004) (holding that an arbitration agreement requiring employees to arbitrate all claims, but reserving employer's right to obtain injunctive relief in a judicial forum for certain causes of action, lacks mutuality).

The Court therefore finds that the arbitration provision is substantively unconscionable. Several courts have concluded that requiring one party to arbitrate but not the other is the "paradigmatic form of substantive unconscionability under California law." Pokorny v. Quixtar, 601 F.3d 987, 1001 (9th Cir. 2010); see, e.g., Armendariz, 24 Cal. 4th at 119 (holding that when an employer, without justification, imposes arbitration on an employee without also accepting such limitations, the arbitration lacks mutuality). Here, creditor's self-help or judicial remedies of replevin, garnishment, repossession, or foreclosure, are claims likely to be brought exclusively by Defendant AGFS if and when Plaintiff failed to pay. Because there is a lack of mutuality in the arbitration provision, the Court finds the agreement to be substantively unconscionable.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that both elements of procedural and substantive unconscionability are present in the arbitration provision, and so it is unenforceable.[11] See Circuit City, 279 F.3July 23, 2012d at 892; Armendariz, 24 Cal. 4th at

//

//

---

[11] Because the Court finds the arbitration provision unconscionable, the Court will not reach Plaintiff's other arguments that the arbitration provision is unenforceable because the selected arbitrator, the National Arbitration Forum, no longer arbitrates consumer disputes and that Defendant allegedly waived its right arbitrate.

13

114. Thus, Defendant's Motion to Compel Arbitration is DENIED.

**IT IS SO ORDERED.**

Dated: July 23, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE